EVAN R. MOSES, CA Bar No. 198099
evan.moses@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

ERIC E. SUITS, CA Bar No. 232762
eric.suits@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
500 Capitol Mall, Suite 2500
Sacramento, CA 95814
Telephone: 916-840-3150
Facsimile: 916-840-3159

Attorneys for Defendants
PHYSICAL REHABILITATION NETWORK, LLC and
HEALTHCARE EMPLOYEE SERVICES, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY CUSHMAN, individually and on behalf of others similarly situated; and MARITZA HERNANDEZ, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PHYSICAL REHABILITATION NETWORK, LLC, a DELAWARE limited liability company; HEALTHCARE EMPLOYEE SERVICES, LLC, a California limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. '23CV1798 BEN DDL<br><br>**DEFENDANT PHYSICAL REHABILITATION NETWORK, LLC AND HEALTHCARE EMPLOYEE SERVICES, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; and Declaration of Nicholas Poan]<br><br>Complaint Filed: July 21, 2023<br>Trial Date:          TBD |

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFFS ANTHONY CUSHMAN AND MARITZA HERNANDEZ AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendants Physical Rehabilitation Network, LLC and Healthcare Employee Services, LLC ("Defendants"), by and through the undersigned counsel, hereby remove the above-entitled action from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California pursuant to 28 U.S.C. Sections 1332, 1441(a) and 1446. In support of such removal, Defendants state as follows:

## I. TIMELINESS OF REMOVAL

1. On July 21, 2023, plaintiffs Anthony Cushman and Maritza Hernandez ("Plaintiffs") filed this putative class action against defendants Physical Rehabilitation Network, LLC and Healthcare Employee Services, LLC ("Defendants") alleging causes of action for: (1) unpaid overtime; (2) unpaid meal period premiums; (3) unpaid rest period premiums; (4) unpaid minimum wage; (5) untimely payment of final wages; (6) untimely payment of wages during employment; (7) failure to provide accurate wage statements; (8) failure to reimburse for business expenses; and (9) unfair competition. The case was filed in California State court in the San Diego County, Case No. 37-2023-00031035-CU-OE-CTL. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons and Complaint, and all other process, pleadings, and orders served on Defendants in the State Court Action are attached to this Notice of Removal as **Exhibit A**.

2. On August 3, 2023, Defendants received service of the Summons and Complaint through their registered agents for service of process. These documents were the initial pleadings received by Defendants setting forth of the claims upon which this action is based. True and correct copies of these documents, along with all pleadings, process, and other documents Defendants have received in this action are attached hereto as **Exhibit A.**

3. A CAFA case may be removed at any time, provided that neither of the two 30-day periods under 28 U.S.C. § 1446(b)(1) and (b)(3) has been triggered. *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013).

4. 28 U.S.C. § 1446(b)(1) provides that, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based…"

5. "[N]otice of removability under § 1446(b)(1) is determined through examination of the four corners of the applicable pleadings[.]" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). The Complaint does not "reveal on its face the facts necessary for federal court jurisdiction." *Rea v. Michaels Stores, Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (quoting *Harris*, 425 F.3d at 691-92). Specifically, it does not reveal on its face that the amount in controversy exceeds $5,000,000 for CAFA removal purposes.

6. 28 U.S.C. § 1446(b)(3) provides that, "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

7. Therefore, because the Complaint does not reveal the facts necessary for federal court jurisdiction on its face, and no pleading has been served that would allow Defendants to ascertain that the case is one which is or has become removable, this removal is timely.

## II.   SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

8. Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject-matter jurisdiction over this action and all claims asserted against Defendants, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), *Id*. § 1332(d).

9.     CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under Civ. Proc. Code § 382, California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action. See 28 U.S.C. § 1332(d)(1)(B).

10.    Plaintiff seeks to represent the following Class: "All current and former non-exempt employees of any of the Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiffs' complaint up until the time that notice of the certified class action is provided to the class." (Compl., ¶ 14.)

11.    Among other things, Plaintiff alleges putative class members are entitled to unpaid wages—both minimum wages and overtime, meal and rest period premiums, unreimbursed business expenses, statutory penalties for late payment of wages and inaccurate wage statements, interest, and attorneys' fees. (Compl., ¶¶ 18-44.) More specifically, Plaintiff alleges that: "Defendants engaged in an ongoing and systematic scheme of wage abuse against their hourly-paid or non-exempt employees. As set forth in more detail below, this scheme involved, *inter alia*, regularly requiring Plaintiffs and the Class to work off-the-clock without compensation, thereby failing to pay them for all hours worked, including minimum and overtime wages. Defendants also implemented policies that prohibited Plaintiffs and the Class from accurately recording the actual time worked, resulting in a failure to pay Plaintiffs and the Class all wages owed. In addition, Defendants routinely failed to permit Plaintiffs and the Class to take timely and duty-free meal periods and rest periods in violation of California law. Defendants also failed to reimburse Plaintiffs and the Class for all necessary business-related expenses." (Compl., ¶ 24.)

12.    Removal of a class action under CAFA is proper if: (1) there are at least one hundred (100) members in the putative class; (2) there is minimal diversity

between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d), 1441.

13. Defendants deny any liability in this case, both as to Plaintiffs' individual claims and as to the claims they seek to pursue on behalf of the putative class. However, solely for purposes of the jurisdictional requirements for removal, the allegations in Plaintiffs' Complaint and a thorough analysis of Defendants' data demonstrate a putative class of more than one hundred (100) members and the alleged claims placed in controversy are, in the aggregate, an amount substantially exceeding five million dollars ($5,000,000). *See* 28 U.S.C. § 1332(d)(6).

**A.   The Proposed Class Consists of More Than One Hundred (100) Members**

14. Based on the allegations in the Complaint, this action satisfies CAFA's requirement that the putative class contains at least one hundred (100) members. *See* 28 U.S.C. § 1332(d)(5)(B).

15. Plaintiffs propose to represent the following Class: "All current and former non-exempt employees of any of the Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiffs' complaint up until the time that notice of the certified class action is provided to the class." (Compl., ¶ 14.)

16. Based on a review of the Defendants' business records, the putative class, as defined by Plaintiffs' Complaint, includes at least 1,610 putative class members.[1] (Declaration of Nicholas Poan in Support of Defendants' Notice of Removal ("Poan Decl."), ¶ 9.)

---

[1] For purposes of this removal, Defendants have used data representing the time between October 1, 2019 and September 8, 2023, which is approximately two months shorter than the actual putative class period. Thus, the number of putative class members relied upon in this removal are actually *lower* than the actual damages for amount in controversy purposes.

17. Although Defendants deny class treatment is appropriate, Plaintiffs' proposed class, as pled, and if certified, would easily consist of more than one hundred (100) members

### B. Diversity of the Parties Exists

18. Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any member of the putative class must be a citizen of a different state from any defendant. *See* 28 U.S.C. § 1332(d)(2)(A). That is, the citizenship of at least one class member is diverse from the citizenship of at least one defendant. *Id.*

19. A person is a citizen of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th Cir. 1983). A party's residence is *prima facie* evidence of his or her domicile. *Ayala v. Cox Auto., Inc.,* No. CV 16-06341-GHK (ASx), 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir. 1994)). Plaintiffs have alleged they are residents of California. (Compl., ¶¶ 6-7.) These allegations are *prima facie* evidence of domicile, which creates a rebuttable presumption sufficient to support removal. *Lew v. Moss,* 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in state court complaint create rebuttable presumption of domicile). Plaintiffs are therefore considered citizens of California for purposes of removal under CAFA. *See Ayala,* 2016 WL 6561284 at *4.

20. The citizenship of an LLC for the purposes of diversity jurisdiction is the location of citizenship of its members. *Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006).

21. Similarly, district courts routinely apply the general LLC diversity rule when determining LLC citizenship for purposes of CAFA jurisdiction. *See, Marcelino v. Charter Communs., LLC*, 2019 U.S. Dist. LEXIS 74494, at *4 (S.D. Cal. May 2, 2019) (stating in analysis of CAFA jurisdiction that "Plaintiff's allegations concerning the state of incorporation and the location of LLC's headquarters do not properly allege [party's] citizenship.")

22. At the time this action commenced in state court and as remains today, Defendant Physical Rehabilitation Networks, LLC is a limited liability company organized under the laws of the State of Delaware. (Poan Decl., ¶ 4.) The sole member of Physical Rehabilitation Networks, LLC is Sienna Health Ventures, LLC, which is also a limited liability company organized under the laws of the State of Delaware. (*Id.*) The sole member of Sienna Health Ventures, LLC is PRN Intermediate Holdco, Inc., a corporation which was, at the time of filing of this action, and continues to be, organized under the laws of the state of Delaware. (*Id.*)

23. At the time this action commenced in state court and as remains today, Defendant Healthcare Employee Services, LLC is a limited liability company organized under the laws of the State of Delaware. (Poan Decl., ¶ 4.) The sole member of Healthcare Employee Services, LLC is Sienna Health Ventures, LLC, which is also a limited liability company organized under the laws of the State of Delaware. (*Id.*) The sole member of Sienna Health Ventures, LLC is PRN Intermediate Holdco, Inc., a corporation which was, at the time of filing of this action, and continues to be, organized under the laws of the state of Delaware. (*Id.*)

24. PRN Intermediate Holdco, Inc., maintains its principal place of business in Frisco, Texas. (*Id.* ¶¶ 5-6). At its principal place of business in Frisco, Texas, PRN Intermediate Holdco, Inc. performs the vast majority of its executive and administrative functions, including but not limited to directing: (1) general business strategy and operations; and (2) compliance with state and federal laws, including the provision of legal services associated with such matters. (*Id.*)

25. Thus, Defendants Healthcare Employee Services, LLC and Physical Rehabilitation Network, LLC are both citizens of Texas.

26. "For purposes of removal … the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). Inclusion of "DOE" defendants in a state court Complaint has no effect on removability. *Newcombe v. Adolf Coors Co.,* 157 F.3d 686, 690 (9th Cir. 1998) (holding that in determining

whether diversity of citizenship exists, only named defendants are considered). Therefore, Plaintiffs' inclusion of DOES 1 through 50 in the Complaint is irrelevant to the issue of diversity for purposes of removal.

27. Pursuant to 28 U.S.C. §§ 1332(a) and 1441(a), this Court has original jurisdiction over this case under CAFA because Plaintiffs are and was, at all times relevant to this action, citizens of the State of California, and Defendants Physical Rehabilitation Network, LLC and Healthcare Employee Services, LLC were, at all times relevant to this action, citizens of the State of Texas, respectively. Therefore, complete diversity between Plaintiffs and Defendants exist now, and did exist at the time the Complaint was filed, and minimal diversity exists between Defendants and the putative class.

### C. The Amount in Controversy Exceeds Five Million Dollars ($5,000,000)

28. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction over this matter because, in addition to the other requirements of § 1332(d), the amount in controversy in this action exceeds five million dollars ($5,000,000), exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). Of note, in calculating the amount in controversy, a court must aggregate the claims of all individual class members. *See* 28 U.S.C. § 1332(d)(6).

29. Unlike other cases, there is no anti-removal presumption for cases invoking CAFA. *Arias v. Residency Inn by Marriott,* 936 F.3d 920, 922 (9th Cir. 2019).

30. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co. v. Owens,* 574 U.S. 81, 89 (2014). A removing defendant's notice of removal "need not contain evidentiary submissions." *Arias,* 936 F.3d at 922 (quoting *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015)). Thus, to satisfy its burden, a defendant may rely on a "chain of reasoning" that is based on

"reasonable" "assumptions." *LaCross v. Knight Transp. Inc.,* 775 F.3d 1200, 1201 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias,* 936 F.3d at 925; *see also Salter v. Quality Carriers, Inc.,* 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (internal citations and punctuation omitted). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 400 (9th Cir. 2010). "[I]n that sense, the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover. *Arias,* 936 F.3d at 927 (explaining that amount in controversy includes all amounts "at stake" in the litigation at time of removal, "whatever the likelihood that [plaintiff] will actually recover them") (citing *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 417 (9th Cir. 2018)). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee,* 574 U.S. at 87. Moreover, "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias,* 936 F.3d at 922.

31. Moreover, in assessing whether the amount in controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.,* 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). Indeed, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d

///

1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Mkt. Corp.,* 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

32.  Here, Plaintiffs make allegations that Defendants have consistent practices and policies in effect which result in wage and hour violations. (Compl., ¶¶ 18-44.)  Further, Plaintiffs have placed no limit on the frequency of the alleged violations in the Complaint. (*Id.*)  Thus, it is entirely reasonable for Defendants to assume up to a 100% violation rate for each of Plaintiffs' claims.  *See, e.g., Lewis,* 627 F.3d at 398-401; *Rea v. Michaels Stores Inc.,* 742 F.3d 1234, 1239 (9th Cir. 2014) (per curiam); *Bryant v. NCR Corp.,* 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (holding where plaintiff did not submit any evidence as to violation rates, "assumption of a 100 percent violation rate may have been reasonable based on the allegations in the Complaint," which "offered no guidance as to the frequency of the alleged violations, only that [d]efendant had 'a policy and practice' of meal and rest period violations"); *Lopez v. Aerotek, Inc.,* No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (finding "Aerotek could have logically assumed a 100 percent violation rate because Plaintiff does not qualify his allegations" and "[a]lthough afforded the opportunity to do so on this motion, Plaintiff does not assert or suggest an alternative violation rate on which the Court should rely").

33.  Although Defendants categorically deny Plaintiffs' claims have any merit, whatsoever, solely for the purposes of meeting the jurisdictional requirements for removal, if Plaintiffs were to prevail on their First through Ninth Causes of Action on behalf of the putative classes, the requested monetary recovery would far exceed five million dollars ($5,000,000).

### 1. Plaintiffs' waiting time claim

34.  Plaintiffs allege that as a pattern and practice, Defendants regularly failed to pay Plaintiffs and the putative class all wages owed and that they are entitled to waiting time penalties pursuant to Labor Code § 203. (Compl., ¶¶ 37; 79-84.)

35. If an employer fails to pay all wages due an employee at the time of termination, as required by Labor Code § 201, or within 72 hours after resignation, as required by Labor Code § 202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to a maximum of 30 calendar days. Cal. Labor Code § 203.

36. To calculate waiting time penalties, the employee's daily rate of pay is multiplied by a maximum of thirty (30) days, depending on the length of delay in receipt of wages. *See Mamika v. Barca,* 68 Cal. App. 4th 487, 493 (1998) (holding that waiting time penalty is "equivalent to the employee's daily wages for each day she or he remained unpaid up to a total of 30 days" and noting that "critical computation" is "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"); *Tajonar v. Echosphere, LLC,* No. 14cv2732-LAB (RBB), 2015 WL 4064642, at *4 (S.D. Cal. Jul. 2, 2015). Where final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members." *Marentes v. Key Energy Servs. Cal., Inc.,* No. 1:13-cv-02067 AWI JLT, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015); *see also Crummie v. CertifiedSafety, Inc.,* No. 17-cv-03892-RS, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (holding that where plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit").

37. Defendants deny any such penalties are owed to Plaintiffs or any putative class members. However, solely for purposes of this jurisdictional analysis, Defendants rely on Plaintiffs' allegations that the penalties are owed. Plaintiffs' claim is derivative of their minimum wage, overtime, and meal and rest penalty claims, which Plaintiffs allege were a result of Defendants' policies and practices. (Compl., ¶¶ 37; 79-84.)

38. Based on Plaintiffs' allegations, it is reasonable to use a 100% violation rate for the of the former, non-exempt employees in the three-year section 203

limitations period. *See Crummie,* 2017 WL 4544747 at *3 (upholding calculation that "waiting time penalties accrued to the thirty-day limit" based on allegations of a pattern or practice of withholding wages owed); *Archuleta v. Avcorp Composite Fab., Inc.,* No. CV 18-8106 PSG (FFMx), 2018 WL 6382049, at *5 (C.D. Cal. Dec. 6, 2018) (maximum 30-day waiting time penalties was reasonable where "[t]he complaint's claim for waiting time penalties appears to be at least in part based on an allegation that Defendants never paid the 'overtime wages, minimum wages, and meal period violation [payments]' the employees were due"); *Avila v. Rue21, Inc.,* 432 F. Supp. 3d 1175, 1188 (E.D. Cal. 2020) ("Because Plaintiff is asking for a maximum statutory penalty of 30 days ... it is reasonable to assume based on the FAC that Plaintiff could obtain statutory penalty of maximum 30 days."); *Mariscal v. Ariz. Tile, LLC,* No. 8:20-cv-02071-JLS-KES, 2021 WL 1400892, at *3 (C.D. Cal. Apr. 14, 2021) (same); *Chavez v. Pratt (Robert Mann Packaging), LLC,* No. 19-CV-00719-NC, 2019 WL 1501576, at *4 (N.D. Cal. Apr. 5, 2019) ("By tying the unpaid final wage claim to his other claims, Chavez makes Pratt's assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed Pratt during the statutory period was due unpaid wages."); *Mackall v. Healthsource Glob. Staffing, Inc.,* No. 16-cv-03810-WHO, 2016 WL 4579099, at *6 (N.D. Cal. Sep. 2, 2016) (finding that "allegations of willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations)" support an estimated 100% violation rate for waiting time penalties).

39. Thus, to calculate the amount in controversy for the waiting time penalty claim, this removal uses Defendants' business records for the putative class members to determine the number of former employees in the putative class who separated their employment with Defendants within the three (3) year statute of limitation period (July 21, 2020 to present). (Poan Decl., ¶ 10.) Between July 21, 2020 and

///

1  September 8, 2023, 822 employees were terminated or separated from their
2  employment.  (*Id*.)
3      40.    Based on Plaintiffs' allegations, the amount in controversy on the
4  waiting time penalty claim is $4,119,206 [average hourly rate ($20.88) * 8 * 30 *
5  number of separated employees (822) = **$4,119,206**]

### 2. Plaintiffs' meal period claim

7      41.    Plaintiffs allege that as a pattern and practice, Defendants regularly
8  failed to pay Plaintiffs and the putative class premium wages for meal periods that
9  were missed, late, interrupted, or shortened in violation of California law.  (Compl.,
10 ¶¶ 27; 54-64.)
11     42.    When determining the amount placed in controversy by a plaintiff's
12 allegations regarding a common "practice" of meal period violations like those
13 alleged by Plaintiff in the Complaint, an estimate of one meal period violation for
14 every week of work is both reasonable and conservative.  *See Campbell v. Vitran*
15 *Exp., Inc.*, 471 Fed. Appx. 646, 649 (9th Cir. 2012); *Mackall v. Healthsource Glob.*
16 *Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2,
17 2016) (acknowledging multiple decisions from California district courts recognize
18 assumptions of one missed meal period per week as "reasonable in light of policy
19 and practice allegations and allegations that defendants' 'regularly' denied class
20 member breaks"); *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-CV-09809-
21 SVW-PJ, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (approving defendant's
22 assumption class members missed one required meal period per week).
23     43.    From October 1, 2019 to September 8, 2023, the putative class of at least
24 1,610 employees worked at least 104,909 workweeks at an hourly wage of $20.88
25 and an average shift length of 8 hours.  (Poan Decl., ¶ 9.)  Thus, based on a
26 *conservative* analysis of a violation rate of only 1 meal period violation per
27 employee, per work week, putative class members are entitled to recover up to the
28 following amount for the meal period claim: **$2,190,500** [average hourly rate ($20.88

1 * 1 missed meal period per pay period * 104,909 workweeks]. Thus, the alleged amount in controversy for Plaintiffs' class claim for their meal period claim is **$2,190,500**.

### 3. Plaintiffs' rest period claim

44. Plaintiffs allege that as a pattern and practice, Defendants regularly failed to pay Plaintiffs and the putative class premium wages for rest periods that were missed, late, interrupted, or shortened in violation of California law. (Compl., ¶¶ 30; 65-73.) As with meal period violations, an estimate of one rest break violation per week of work is both reasonable and conservative where, as here, the Plaintiffs contend that that Defendants had a policy or practice of failing to provide rest periods. *Id.*, at ¶¶ 46-47, and 49; *Campbell*, 471 Fed. Appx. at 649; *Mackall*, 2016 WL 4579099, at *5; *Unutoa*, 2015 WL 898512, at *3.

45. Once again, based on a review of Defendants' business records, from October 1, 2019 to September 8, 2023, the putative class of at least 1,610 employees worked at least 104,909 workweeks at an hourly wage of $20.88 and an average shift length of 8 hours. (Poan Decl., ¶ 9.) Thus, based on a *conservative* analysis of a violation rate of only 1 rest period violation per employee, per work week, putative class members are entitled to recover up to the following amount for the rest period claim: **$2,190,500** [average hourly rate ($20.88 * 1 missed rest period per pay period * 104,909 workweeks]. Thus, the alleged amount in controversy for Plaintiffs' class claim for their rest period claim is **$2,190,500**.

### 4. Plaintiffs' inaccurate wage statement claim

46. Plaintiff alleges that as a pattern and practice, Defendants regularly failed to provide Plaintiffs and the putative class complete and accurate wage statements in accordance with California law. (Compl., ¶¶ 39; 91-97.) A one-year statutory period applies to Plaintiff's claim for wage statement penalties. Cal. Code Civ. Proc. § 340(a); *Falk v. Children's Hospital Los Angeles*, 237 Cal.App.4th 1454, 1469 (2015).

47. Based on a review of Defendants business records, 16,681 wage statements were issued to 959 putative class members from July 21, 2022 to September 8, 2023. (Poan Decl., ¶ 11.) Therefore, putative class members are entitled to recover up to the following amount for the inaccurate wage statement claim: **$1,620,150** [workweeks (16,681) * $100].

### 5. Attorneys' fees

48. Plaintiffs seek to recover attorneys' fees, which may be properly included in the calculation of the amount in controversy when an underlying statute authorizes an award of attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998). *Galt* also recognizes discretionary attorneys' fees can be included when determining the amount in controversy. *Galt*, 142 F.3d, at 1155-56. In California, with wage and hour class actions settling prior to trial for millions of dollars, "it is not uncommon for an attorneys' fee award to be in the realm of 25% to 30% of the settlement." *Muniz v. Pilot Travel Centers LLC*, No. S-07-0325 FCD EFB, 2007 WL 1302504, at *4, n. 8 (E.D. Cal. May 1, 2007). Therefore, with an underlying alleged amount in controversy of at least $10,120,356, Plaintiffs would likely seek attorneys' fees of at least 25% of that amount, or **$2,530,089**. [$10,120,356 * .25].

### 6. Summary of CAFA amount in controversy

49. As calculated above and detailed below, the amounts in controversy for only *four* of Plaintiffs' *nine*[2] alleged class claims, including attorneys' fees, is $12,650,445, which exceeds the amount in controversy required for jurisdiction under 28 U.S.C. § 1332(d) *by more than $7,000,000*.

| Claim | Amount in Controversy |
|---|---|
| Waiting Time Claim | $4,119,206 |

---

[2] If necessary, Defendants request the opportunity to more fully brief issues related to the amount in controversy, including the amounts in controversy regarding the five other claims that are not specifically addressed herein.

| Meal Period Claim | $2,190,500 |
| --- | --- |
| Rest Period Claim | $2,190,500 |
| Attorneys Fees | $2,530,089 |
| **Total** | **$12,650,445** |

## III. DEFENDANTS HAVE SATISIFED THE REQUIREMENTS OF 28 U.S.C. § 1446

50. In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District Court of the United States in which this action is pending. The Superior Court of California, San Diego County, is located within the Southern District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. §§ 84(a) and 1441(a).

51. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other papers served upon Defendants are attached hereto as **Exhibit A.**

52. In accordance with 28 U.S.C. § 1446(d), Defendants' counsel shall serve Plaintiff with a copy of this Notice of Removal and will file a Notice with the Clerk for the San Diego County Superior Court. Defendant shall file a Notice of Compliance of these requirements in this Court promptly after completion.

53. As required by Fed. R. Civ. P. 7.1, Defendants concurrently file their Certificate of Interested Parties with this filing of the Notice of Removal.

## IV. CONCLUSION

54. For the foregoing reasons, Defendants PHYSICAL REHABILITATION NETWORK, LLC and HEALTHCARE EMPLOYEE SERVICES, LLC hereby remove the above-entitled action to the United States District Court for the Southern District of California.

55. In the event this Court has any questions regarding the propriety of this Notice of Removal, Defendants request this Court set an evidentiary hearing so that

they may have an opportunity to more fully brief the Court on the basis of this removal.

DATED: September 28, 2023

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Eric E. Suits
Evan R. Moses
Eric E. Suits

Attorneys for Defendants
PHYSICAL REHABILITATION NETWORK, LLC and HEALTHCARE EMPLOYEE SERVICES, LLC

# CERTIFICATE OF SERVICE

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Sacramento in the office of a member of the bar of this court at whose direction the service was made. My business address is 500 Capitol Mall, Suite 2500, Sacramento, CA 95814. My email address is: elaine.blizzard@ogletree.com.

On September 28, 2023, I served the following document(s):

**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed on the following party(ies):

| | |
|---|---|
| Heather Davis | Attorneys for Plaintiffs |
| Amir Nayebdadash | ANTHONY CUSHMAN and |
| Priscilla Gamino | MARITZA HERNANDEZ |
| PROTECTION LAW GROUP, LLP | |
| 237 California Street | |
| El Segundo, CA 90245 | |
| Tel.: (424) 290-3095 | |
| Fax: (866) 264-7880 | |
| Email: heather@protectionlawgroup.com | |
| amir@protectionlawgroup.com | |
| priscilla@protectionlawgroup.com | |

☒ **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on September 28, 2023 at Sacramento, California.

_____
Elaine M. Blizzard

17
Case No. _____
DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT